We're asking this court today to maintain the distinction between murder and manslaughter under 924C, given the parameters of Borden and Begay, and we believe the government errs in blending these greater and lesser offenses together in its briefing. There are two controlling principles, the first from Borden, which is the Supreme Court, saying that a crime of violence must be a deliberate choice. It must involve a deliberate, purposeful, knowing act. And, of course, Borden left open a certain type of reckless conduct that may exceed ordinary recklessness. And that's what this Court addressed on Bonk and Begay. And this Court looked at the varying degrees of recklessness that separate criminal homicide categories. And that was what was crucial to this Court's distinction. And so the government errs by disregarding that the elements are different for second-degree murder and voluntary manslaughter. Kagan How is it different in terms of mens rea? Well, we know they're different because one's a lesser-included offense. So they can't be the same. And the act is the same across all criminal homicides, that there be an unlawful killing. So the only difference between each category of homicide is the mens rea. So what's voluntary manslaughter... Are you saying there's no mens rea in voluntary manslaughter? There is a mens rea. Okay. Yes. It is a type of impeded recklessness where extenuating circumstances impair the control and judgment of an objectively reasonable person. So am I correct in understanding that in order for you to prevail, given Begay's analysis, in order for you to prevail, we would have to accept that voluntary manslaughter versus involuntary manslaughter requires some lesser degree of recklessness. Than second-degree murder. Not to the negligence level, but some lesser degree of depraved heart recklessness, right? Yes. So what case stands for that proposition? What would be your best case that you would want us to look at? Well, frankly, it's really Begay that talks about the differences between murder and manslaughter and the key being malice. But Begay held that extreme indifference to human life, the value of human life, would be enough under the categorical approach. So I think what we're looking for is something saying that the mens rea for voluntary manslaughter is lower than extreme indifference to the value of human life. And the way that I see our precedent, including Paul, is that for voluntary manslaughter, it requires at least the specific intent for extreme indifference. And I haven't seen anything that specifically says voluntary manslaughter includes a lower mens rea than that. That's correct that the words extreme recklessness are in both jury instructions. But what must be looked at are all of the elements for both offense. So the key is that second degree murder has to be malicious recklessness. And that's really what Begay held its distinction on because it's malicious. It's a deliberate choice to be indifferent, to be reckless. Whereas for voluntary manslaughter under common law and under this court's case law, I think the best cases is probably Lacina and Begay itself talks about involuntary manslaughter, though. It was, but it goes into the quality of awareness of risk is the point from Lacina used for Begay. So in other words, the jury has to find an objectively reasonable person acting under passion or provocation would commit that act. And so it's a lesser mens rea because it's the judgment and self-control and awareness that is impaired by this extenuating circumstance that causes the reaction of the act for voluntary manslaughter. And that's why it's a lesser offense than second degree, which requires malice, which is really what Begay hung its decision on, is this malicious recklessness, because that extenuating circumstances. And perhaps some examples may help because this can get, you know, theoretical. So for second degree murder, a classic scenario is a group of people in a room and someone fires a weapon into that room, not particularly aiming for someone, but deliberately not caring if they hit someone where it was almost certain, you know, they're going to hit someone, or examples given in treatises. For voluntary manslaughter. For second degree. For second degree. Second degree. For voluntary manslaughter, I think there's a good case. It's relied on by Begay and Lacina. It is about voluntary manslaughter, not involuntary. It's U.S. v. Dixon. It's from the D.C. Circuit Court. It's from 1969, but again, it's relied on repeatedly by this court, and it's cited in Begay. And in that circumstance, it was a party where a knife fight broke out, and the host of the party went and got a revolver to break up the fight and order the people out. The people somewhat left, but it continued, you know, it moved kind of outside, and one of the persons involved in the fight confronted the host, and there became an argument and some shoving, and the gun killed one of the knife fight perpetrators. The gun killed him, or the perpetrator? Well, the host holding the gun was shoving or moving somehow, and the jury found, they were given all of the instructions for the various levels, and the jury found voluntary manslaughter, which is what we have here, because again, that was under passion or provocation, and it was reckless behavior, but it was not the type of choice of reckless behavior that has to be for murder, for malice aforethought. And that is the key distinction we're asking this court to maintain, because malice is more deliberate, purposeful knowing, so it gets to that side of extreme, you know, recklessness that Begay found, whereas voluntary manslaughter, the type of recklessness, is closer, you know, it's not quite negligent, because that's involuntary, but it's in reaction to circumstances that an objectively reasonable person would react, that it's not quite a fully conscious choice, they're not quite aware of the risk of who they're going to hurt because of these extenuating circumstances that cloud the judgment, and that's where the case law tries to distinguish. How do we get around the fact that the jury is asked to make a finding that the defendant acted with extreme indifference, at minimum, extreme indifference to the value of human life, and then my understanding is they make that finding, and then they also find the mitigating circumstance that reduces it from, you know, murder to voluntary manslaughter, which is the provocation, I think, that you're discussing around, but it seems to me they are expected to find, in the first instance, the mens rea. Well, that is in the jury instructions. So the two jury instructions, they, the first for second degree, they have to find killed with malice aforethought, and then malice aforethought is defined, you know, as either deliberately or extremely reckless. So for voluntary manslaughter, they're told, first, while in the sudden quarrel, or heat of passion or provocation, the defendant killed intentionally or with reckless disregard. So it's a mitigated recklessness. But we would have to read that circumstance acting in the heat of passion into the mens rea of extreme disregard for human life. Yes, because that's the, again, that's the quality of the awareness of the risk to others is diminished for manslaughter, and that's what Begay held was a distinguishing factor, is that conscious disregard of risk is present for murder, whereas it is not present for manslaughter. Because of the extenuating circumstances, the jury must find the, that an objective, reasonable person would react to. Did you want to save a little bit of time? Yes, thank you. All right, let's hear from the government. Good morning, may it please the court, Adam Flake for the United States. Before I begin, I'd just like to thank the court for allowing me to appear remotely at the last minute. I have not been feeling well, and I didn't feel like walking through a crowded airport was the civically minded thing to do. So I'm keeping my totally understandable. Thank you. I disagree with the defense's characterization of Begay. I think that Begay Borden, and subsequently Begay, clearly control this case. The critical issue is what mens rea is required to commit a crime of violence, and Begay clearly says that either intent or knowledge or recklessness with extreme regard for human life. And that's the same mens rea that is required for voluntary manslaughter. Now the fact that a reasonable person might feel that way is a mitigating circumstance, but it has, it does not undermine the mens rea that is required to prove the crime. What do you make of the language in Begay that counsel relies on that talks about the difference in degree of recklessness? Referencing manslaughter lies in the quality of the awareness of the risk. That language, I think, cites to Lesina and distinguishes between the second degree murder versus manslaughter. That's correct, your honor. But again, Lesina is talking about involuntary manslaughter, which does not require a showing of extreme disregard for human life. And in fact, elsewhere in Begay, it talks, it says the conduct of, the conduct fairly characterizes extreme disregard for human life. Extreme and necessarily oppositional because a defendant certainly must be aware that there are potential victims that he can act indifferently towards. And so the, you know, the fact that I'm furious, I form this mens rea required to meet the statute. You say, you know, a person might behave that way, but it doesn't lessen the fact that that was the mens rea that a person formed before they committed the crime. And then unless the panel doesn't have any other questions or has any other questions, I'll concede the rest of my time. All right. Thank you very much. Thank you, your honors. I just, two quick points. I think for the court to rule in the government's favor, it would have to make two new holdings. And one is that going against Begay, finding that the malice difference between, you know, that malicious, deliberate choice between murder and manslaughter is a distinction that doesn't matter for 924C purposes. Despite Borden holding, it must be a knowing, conscious choice. And second, this Court would have to hold that voluntary manslaughter falls under the Force Clause, which it has not done before since the recklessness, since the holding that recklessness could not qualify. So, again, it's that it's the only thing that distinguishes the various categories of homicide are the mens rea. And so it's the — it's that the decision of the defendant is not made with full awareness because it's clouded because of the external circumstances. And that's what the jury is presented with, and that's what the jury found in this case, that this was a lower mens rea than what is required for second-degree murder. And for that, we ask this Court to maintain those distinctions, to keep 924C very narrowly tailored to conscious choices. Thank you very much, counsel, both sides for your argument today. The matter is submitted for decision to be issued in due course.
judges: NGUYEN, SUNG, Bataillon